JUDGE GRIESA

12 CIV 4398

**CLAYMAN & ROSENBERG LLP**
**ATTORNEYS FOR PLAINTIFF**
Brian D. Linder (BL3581)
Paul S. Hugel (PH4749)
305 Madison Avenue - Suite 1301
New York, New York 10165
(212) 922-1080  phone
(212) 949-8255  facsimile



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LYMAN COMMERCE SOLUTIONS, INC.,

        Plaintiff,

-against-

CONRAD LUNG,
RICHARD GILBERT,
LUNG'S CONSULTANTS LLC,
R.D. SIMPSON, INC.,
THE RICHARD GILBERT FAMILY TRUST, and
IRWIN LEVY AS TRUSTEE OF THE RICHARD
GILBERT FAMILY TRUST

        Defendants.

INDEX NO.

COMPLAINT

    Plaintiff Lyman Commerce Solutions, Inc., by and through its attorneys, Clayman & Rosenberg LLP., as and for its Complaint alleges as follows:

### NATURE OF THE ACTION

    1.    This is a diversity action to set aside fraudulent conveyances under New York Debtor and Creditor Law. Each of these conveyances was made by MUDD (USA) LLC to its owners, officers and to entities under their control after Plaintiff commenced a suit against MUDD which resulted in an unsatisfied judgment of $2,176,049 plus accrued interest. ("the MUDD Judgment").

2.     Defendants Richard Gilbert ("Gilbert") and Conrad Lung ("Lung") were, respectively, the Chief Executive Officer and President of MUDD. The remaining defendants are entities owned by and/or under the direct control of Gilbert and Lung. While plaintiff's suit was pending, MUDD transferred nearly $4 million to the defendants. MUDD was then dissolved. No part of the MUDD Judgment has ever been paid to Plaintiff.

3.     The conveyances by MUDD to the defendants are fraudulent under New York Debtor and Creditors Law § 273-a and 276. Accordingly, they should be set aside or disregarded pursuant to Debtor and Creditor Law § 278 and judgment should be entered against the defendants in an amount sufficient to satisfy the MUDD Judgment.

## THE PARTIES

4.     Plaintiff Lyman Commerce Solutions, Inc. ("LCS" or "Plaintiff") is a corporation formed under the laws of the State of Iowa with its principal place of business in Des Moines, Iowa. LCS is a provider of online commerce technology, marketing and design.

5.     Judgment-Debtor MUDD (USA) LLC ("MUDD") was a limited liability company formed under the laws of the State of Delaware with its principal place of business in the State, City and County of New York. MUDD ceased business operations in January 2007 and was dissolved in August 2008.

6.     Defendant Richard Gilbert is a real person domiciled in the State, City and County of New York. Gilbert was a member of MUDD from the time of its creation in 2004 until August 2007. Gilbert was MUDD's Chief Executive Officer from its formation in 2004 until May 2007. Gilbert was also manager on MUDD's Board of Managers from its formation in 2004 until August 2007.

7. Defendant R.D. Simpson, Inc. ("R.D. Simpson) is a corporation formed under the laws of the State of Georgia with its headquarters and principal place of business located in Barstow County, Georgia. R.D. Simpson was a member of MUDD from the time of its creation in 2004 until August 2007. Gilbert is the President of R.D. Simpson and its sole legal and beneficial owner. Gilbert exercises complete dominion and control over R.D. Simpson, uses R.D. Simpson's funds for his own personal expenses, including payments for his private jet, and freely transfers funds between R.D. Simpson and his personal accounts without regard for corporate formalities.

8. Defendant The Richard Gilbert Family Trust ("the Gilbert Trust") is a trust formed by or at the direction of Gilbert. The Gilbert Trust was a member of MUDD from the time of its creation in 2004 until August 2008. At all times relevant hereto, Gilbert and/or members of his immediate family were the sole beneficiaries of the Gilbert Trust. Defendant Irwin Levy, is, upon information and belief, the Trustee of the Gilbert Trust and is sued herein in such capacity. Levy is an attorney practicing in the City of New York. Upon information and belief, neither Levy nor any of the beneficiaries the Gilbert Trust reside in the State of Iowa.

9. Defendant Conrad Lung ("Lung") is a real person currently domiciled in the People's Republic of China. At all times relevant hereto, Lung resided in the City, County and State of New York. At all times relevant hereto, Lung was the President of MUDD (USA) LLC. Lung was a manager on MUDD's Board of Managers from its formation in 2004 until its dissolution in August 2008.

10. Defendant Lung's Consultants LLC ("Lung's Consultants") is a limited liability company formed under the laws of the State of New York. Lung's Consultants place of business registered with the New York Secretary of State is Lung's former residence in the City, County

3

and State of New York. Lung's Consultant's bank statements from 2007 and 2008 indicate that its address was an apartment in the City, County and State of New York in which Lung then resided and which he still owns. The only owners of Lung's Consultant's are Lung, his wife and his daughter. Lung personally exercises complete dominion and control over Lung's Consultants and its assets. Upon information and belief, Lung's Consultants has no employees, no offices, engages in no business activities and has no assets other than bank accounts. Upon information and belief, Lung's Consultants is used solely as a vehicle for Lung to transfer funds between various businesses with which he is affiliated and to pay personal expenses for himself and his family.

## JURISDICTION AND VENUE

11. Pursuant to 28 U.S.C § 1332(a), this court has original jurisdiction over this action as the amount in controversy exceeds $75,000 exclusive of interest and costs and there exists complete diversity of citizenship between the plaintiff and the defendants.

12. Venue exists in this Court pursuant to 28 U.S.C. § 1391(a), as the fraudulent conveyances described herein and other conduct constituting a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district.

## FACTUAL BACKGROUND

### I. MUDD Control Group

13. Gilbert was the founder and majority owner of a company named MUDD LLC ("the Former MUDD"). The Former MUDD was based in New York City and was in the business of marketing and selling clothing under the MUDD brand name. In 2004, a group of

4

investors led by Lung wished to acquire a majority interest in the Former MUDD's business. Through a complex series of transactions, Gilbert transferred the Former MUDD's business to a new entity named MUDD (USA) LLC ("MUDD"). The investment group led by Lung then purchased an 80% stake in the new MUDD. The new MUDD's majority member was thereafter a corporation controlled by Lung and his investment group. Gilbert, through stakes in MUDD owned by him, R.D. Simpson and the Gilbert Trust, (collectively "the Gilbert Group") continued to retain a substantial ownership interest in MUDD.

14.     Directly, and by virtue of his ownership of R.D. Simpson and his control of the Gilbert Trust, Gilbert owned or controlled between 13% and 15% of MUDD's membership units. Gilbert was MUDD Chief Executive Officer from MUDD's creation until May 2007. He was also a manager on MUDD's Board of Managers from MUDD's creation until August 2007. Pursuant to MUDD's operating agreement Gilbert was vested with the direction and supervision of MUDD's day-to-day business affairs, had veto power over certain corporate transactions, and control over the allocation of bonus funds. In addition, the MUDD operating agreement could not be changed without Gilbert's consent. During Gilbert's tenure on the MUDD Board of Managers, he shared control over MUDD's brokerage account with Lung. The Gilbert Group received transfers from MUDD totaling nearly $2.3 million while plaintiff's suit against MUDD was pending.

15.     Lung was the President of MUDD from its formation in 2004 until its dissolution in August 2008. He had authority to act on behalf of MUDD at all relevant times. Along with Gilbert, Lung controlled MUDD's brokerage account. After Gilbert's resignation from MUDD Lung had sole control over the MUDD brokerage account and sole control over MUDD's operating account. Following Gilbert's resignation from MUDD, MUDD's place of business as

5

identified on checks drawn on MUDD's operating account, was Lung's New York City apartment.

16. Lung also controlled MUDD's majority member TFM Holdings Corporation. Lung was the President of TFM and used his home residence as TFM's business address. TFM was in turn owned by Sino Legend, a British Virgin Islands corporation also controlled by Lung in which he served as Director and President. Lung also owned and controlled Lung's Consultants, an entity which received transfers from MUDD totaling more than $1.3 million while plaintiff's suit against MUDD was pending.

17. Gilbert, Lung and entities they owned and/or controlled received the fraudulent conveyances which are the subject of this complaint.

## II. The MUDD Judgment

18. Plaintiff provided online commerce services to MUDD. In early 2006, MUDD defaulted on its contractual payment obligations to Plaintiff.

19. In April 2006, MUDD announced that it had entered into an agreement to sell virtually all of its assets to a public corporation in exchange for approximately $90 million in cash and publicly traded stock.

20. On February 19, 2007, Plaintiff filed a law suit against MUDD in the Iowa District Court for Polk County seeking money damages for breach of contract. MUDD appeared in Iowa District Court and defended the suit. On March 17, 2009, following a bench trial, judgment was entered against MUDD and in favor of Plaintiff in the amount of $2,176,049.01.

21. On February 24, 2010, the New York Supreme Court for the County of New York accorded the Iowa judgment full faith and credit and entered judgment against MUDD in favor

of Plaintiff in the amount of $2,176,049.01 plus accrued interest, costs and disbursement for a total of $2,361,379.00.

22. No part of the judgment against MUDD (the "MUDD Judgment") has been satisfied.

### III. The Fraudulent Conveyances Under New York Debtor and Creditor Law

23. Section 273-a of the New York Debtor and Creditor Law states that "every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such action has been docketed against him is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant, if after final judgment for the plaintiff, the defendant fails to satisfy the judgment."

24. MUDD ceased commercial operations on or about February 6, 2007. At that time MUDD had cash and liquid securities worth in excess of $30 million. By August 2008, all of MUDD's assets had been transferred or dissipated.

25. During this 18 month period, the bulk of MUDD's assets were transferred to offshore bank accounts controlled by unknown individuals or entities. Plaintiff has been unable to obtain information about these accounts or the purported reason for these transfers. In addition to these transfers to offshore accounts, nearly $4 million of MUDD's funds were transferred from MUDD directly to accounts controlled by Gilbert and Lung or to entities they owned and/or controlled.

## SALARY PAYMENTS TO GILBERT AND LUNG

26. Between February 19, 2007 and June 30, 2007, MUDD made periodic salary payments to Gilbert totaling $336,377.25 and to Lung totaling $261,390.00. MUDD was not engaged in business operations during this period.

27. The dates, amounts, method of payments and other details concerning these transfers are set forth in the Table A, annexed hereto.

28. These payments were made without fair consideration as defined by New York Debtor and Creditor Law § 272.

## PAYMENTS TO R.D. SIMPSON

29. MUDD transferred $30,000 to R.D. Simpson on April 2, 2007.

30. MUDD transferred $30,000 to R.D. Simpson on June 7, 2007.

31. Additional details concerning these transfers are set forth in the Table A, annexed hereto.

32. These transfers were made without fair consideration as defined by New York Debtor and Creditor Law § 272.

## THE BUY-OUT AGREEMENT

33. In August 2007, Gilbert and Lung, as managers of MUDD, executed a resolution of the MUDD Board of Managers authorizing MUDD to buy the Gilbert Group's interest in MUDD pursuant to terms set forth in an agreement ("the Buy-Out Agreement"). The Buy-Out Agreement was prepared by MUDD's attorneys, Levy Holm Pellegrino & Drath LLP ("LHPD"), who also acted as attorneys for the Gilbert Group.

34.     Gilbert executed the Buy-Out Agreement on behalf of himself and R.D. Simpson. An attorney from LHPD signed the Buy-Out Agreement as Trustee of the Richard Gilbert Family Trust.

35.     Lung executed the Buy-Out Agreement on behalf of MUDD.

36.     The Buy-Out Agreement was executed in New York by all parties.

37.     Pursuant to the Buy-Out Agreement, on or about August 24, 2007, MUDD made the following transfers: $1,783,000 to R.D. Simpson; $85,000 to the Richard Gilbert Family Trust; and $1,700 to Gilbert. Each of these transfers was made from MUDD's New York brokerage to the recipient after passing through LHPD's New York escrow account.

38.     After these transfers were made, Gilbert resigned as a manager of MUDD.

39.     These transfers were made without fair consideration as defined by New York Debtor and Creditor Law § 272.

40.     Additional details concerning each of these transfers are set forth in the Table A, annexed hereto.

## THE LUNG PAYMENTS

41.     Shortly after transferring $1.8 million to the Gilbert Group under the Buy-Out Agreement, MUDD wired $1.2 million from its New York brokerage account to a New York checking account controlled by Lung and owned Lung's Consultants.

42.     Between July 11, 2007 and August 8, 2008, Lung signed and deposited checks transferring $265,716.87 from MUDD's New York bank account to the New York accounts of Lung's Consultants. Each of these transfers was made by a check signed by Lung on behalf of MUDD and endorsed by Lung as the depositor.

43. The transfers to Lung's consultants were made without fair consideration as defined by New York Debtor and Creditor Law § 272.

44. The transfers to Lung's Consultants were made with the actual intent to hinder, delay or defraud Plaintiff by rendering MUDD unable to pay its obligations to Plaintiff.

45. Additional details concerning each of these transfers are set forth in the Table A, annexed hereto.

## AS FOR PLAINTIFF'S FIRST CAUSE OF ACTION
### (NY DCL § 273-a)

46. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

47. At all times after February 19, 2007, MUDD was a defendant in a money action commenced by Plaintiff or had a money judgment in favor of Plaintiff docketed against it.

48. After February 19, 2007, MUDD made the conveyances identified in Table A to the defendants identified herein.

49. Each of the conveyances identified in Table A was made without fair consideration as that terms is defined in NY DCL § 272.

50. No part of the MUDD Judgment has been satisfied.

51. Pursuant to NY DCL § 273-a, each of the conveyances identified in Table A is therefore fraudulent as to Plaintiff.

52. Pursuant to NY DCL § 278, conveyances to Defendant RICHARD GILBERT totaling $336,377.25 plus accrued interest should be set aside, annulled and disregarded and judgment should be entered against Gilbert up to such amount to the extent necessary to satisfy the MUDD Judgment.

10

53. Pursuant to NY DCL § 278, conveyances to Defendant R.D. SIMPSON, INC. totaling $1,843,300.00 plus accrued interest should be set aside, annulled and disregarded and judgment should be entered against R.D. Simpson up to such amount to the extent necessary to satisfy the MUDD Judgment.

54. Pursuant to NY DCL § 278, conveyances to Defendant THE RICHARD GILBERT FAMILY TRUST totaling $85,000.00 plus accrued interest should be set aside, annulled and disregarded and judgment should be entered against The Richard Gilbert Family Trust up to such amount to the extent necessary to satisfy the MUDD Judgment.

55. Pursuant to NY DCL § 278, conveyances to Defendant CONRAD LUNG totaling $261,390 plus accrued interest should be set aside, annulled and disregarded and judgment should be entered against Lung up to such amount to the extent necessary to satisfy the MUDD Judgment.

56. Pursuant to NY DCL § 278, conveyances to Defendant LUNG'S CONSULTANTS LLC totaling $1,465,716.87 plus accrued interest should be set aside, annulled and disregarded and judgment should be entered against Lung's Consultants up to such amount to the extent necessary to satisfy the MUDD Judgment.

### AS FOR PLAINTIFF'S SECOND CAUSE OF ACTION
### (NY DCL 276)

57. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

58. Each of the conveyances to Lung's Consultants identified in Table A was made by MUDD and received by the recipient with the actual intent to hinder, delay, or defraud

MUDD's present and future creditors. Pursuant to NY DCL § 276, each of these conveyances is therefore fraudulent as to Plaintiff.

59.  Each of the conveyances to Lung's Consultants identified in Table A was made without fair consideration as that terms is defined in NY DCL § 272.

60.  Pursuant to NY DCL § 278, conveyances to Defendant LUNG'S CONSULTANTS LLC totaling $1,465,716.87 plus accrued interest should be set aside, annulled and disregarded and judgment should be entered against Lung's Consultants up to such amount to the extent necessary to satisfy the MUDD Judgment.

## AS FOR PLAINTIFF'S THIRD CAUSE OF ACTION
### (NY DCL 276-a)

61.  Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

62.  The conveyances made to Lung's Consultants set forth in Table A were made by MUDD and received by the transferee with actual intent to hinder, delay or defraud future creditors.

63.  Each of the conveyances to Lung's Consultants identified in Table A was made without fair consideration as that terms is defined in NY DCL § 272.

64.  Pursuant to NY DCL § 276-a, Lung's Consultants is liable to Plaintiff for the reasonable attorney's fees incurred by Plaintiff in this action.

## AS FOR PLAINTIFF'S FOURTH CAUSE OF ACTION
### (Alter Ego Liability Against Lung for Fraudulent Conveyances to Lung's Consultants)

65. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

66. Defendant Lung is the sole managing member of defendant Lung's Consultants LLC. At all times relevant to this action, the only other members of Lung's Consultants were members of Lung's immediate family. Lung complete dominion and control over the company and its assets. Upon information and belief, Lung's Consultants had no employees, no offices, and engaged in no business operation and its only asset consists of bank accounts controlled by Lung. Lung used Lung's Consultants as a vehicle to receive transfers of MUDD's assets. Upon information and belief, Lung used funds in the Lung's Consultants account for his personal benefit such to pay American Express bills for him and his family, to pay for family cars, college club dues, traffic tickets and the like.

67. Lung used his control over MUDD and Lung's Consultants to defraud Plaintiff. Specifically, Lung caused MUDD to transfer $1,465,716.87 to Lung's Consultants as identified in Table A for no legitimate purpose and without any fair exchange of value. Lung personally signed each of the checks transferring MUDD's funds to Lung's Consultants and directed the wire transfer of $1.2 million money from MUDD to Lung's Consultants.

68. Lung used his control over MUDD and his complete domination of Lung's Consultants as a means for obtaining money from MUDD for his personal enjoyment and benefit while depriving MUDD of funds necessary to pay the debt owed to Plaintiff.

69. Lung used his control over Lung's Consultants to perpetrate a wrong and injustice against Plaintiff such that Lung should be individually liable to Plaintiff for the fraudulent conveyances received by MUDD.

13

70. Judgment against Lung should therefore be entered in the amount of $1,465,716.87, plus accrued interest to the extent necessary to satisfy the MUDD Judgment, plus the attorney's fees reasonably incurred by plaintiff.

### AS FOR PLAINTIFF'S FIFTH CAUSE OF ACTION
(Alter Ego Liability Against Gilbert for Fraudulent Conveyances to R.D. Simpson, Inc. and The Richard Gilbert Family Trust)

71. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

72. Gilbert's ownership of MUDD was spread between MUDD membership interests held in his own name and under the name of the Richard Gilbert Family Trust and R.D. Simpson.

73. At all times relevant hereto, defendant Gilbert was the sole legal and beneficial owner of R.D. Simpson and exercised domination and control over the company.

74. At all times relevant hereto, defendant Gilbert exercised complete domination and control over the Richard Gilbert Family Trust ("the Trust") and Gilbert and his immediate family were the sole beneficiaries of the Trust.

75. Gilbert's disregard of the distinction between his own interests and those of the Trust and R.D. Simpson is evidenced by reallocations to MUDD's capital account following the sale of its assets. Prior to making a cash distribution to Gilbert and his entities, Gilbert caused MUDD to retroactively reallocate the capital accounts for him, the Trust and R.D. Simpson so that net losses that would have otherwise gone to the Trust for tax purposes were reallocated to Gilbert and R.D. Simpson and net gains that would have been gone to Gilbert, were instead allocated to the Trust.

76. Gilbert furthermore freely transferred funds between R.D. Simpson and his personal account and used the funds of R.D. Simpson for his personal expenses including his private jet.

77. Gilbert used his control over the Trust and R.D. Simpson to perpetrate a wrong and injustice against Plaintiff such that Gilbert should be individually liable to Plaintiff for the fraudulent conveyances received by the Trust and R.D. Simpson.

78. Judgment against Gilbert should therefore be entered in the amount of $2,264,677.25 plus accrued interest to the extent necessary to satisfy the MUDD Judgment.

**WHEREFORE**, Plaintiff Lyman Commerce Solutions, Inc. demands judgment against the defendants as follows:

a) On the First and Second Causes of Action, against the defendants in the amounts set forth below, plus interest, to the extent necessary to satisfy the MUDD Judgment:

| | |
|---|---|
| CONRAD LUNG | $261,390.00 |
| LUNG'S CONSULTANTS LLC | $1,465,716.87 |
| RICHARD GILBERT | $336,377.25 |
| R.D. SIMPSON, INC. | $1,843,300.00 |
| RICHARD GILBERT FAMILY TRUST | $85,000.00 |

b) On the Third Cause of Action against the defendants Lung and Lung's Consultants in an amount determined by the Court to be equal to the attorney's fees reasonably incurred by the Plaintiff in this action.

c) On the Fourth Cause of Action, against CONRAD LUNG in the amount of $1,465,716.87, plus interest;

e) On the Fifth Cause of Action, against RICHARD GILBERT in the amount of $2,264,677.25, plus interest, to the extent necessary to satisfy the MUDD Judgment;

e)  The costs, disbursements, and attorney's fees incurred by Plaintiff in this action;

f)  Such other and further relief as the Court deems just and proper.

Dated: New York, New York
June 4, 2012

                                                CLAYMAN & ROSENBERG LLP
                                                ATTORNEYS FOR PLAINTIFF

By: _____
      Brian D. Linder (BL3581)
      Paul S. Hugel (PH4749)
      305 Madison Avenue - Suite 1301
      New York, New York 10165
      (212) 922-1080  phone
      (212) 949-8255  facsimile

TABLE A
FRAUDULENT CONVEYANCES

| DATE | RECIPIENT | AMOUNT | DESTINATION ACCOUNT | ORIGINATING MUDD ACCOUNT | PAYMENT METHOD |
|---|---|---|---|---|---|
| bi-weekly payments 2/19/07-6/30/07 | Conrad Lung | $261,390.00 | unknown | ADP Acc. LQV. | Direct Deposit |
| 3/1/2007 | Richard Gilbert | $125,000.00 | HSBC | Wachovia - 2000013023629 | Wire |
| 4/5/2007 | Richard Gilbert | $125,000.00 | HSBC | Wachovia - 2000013023629 | Wire |
| 4/9/2007 | R.D. Simpson | $30,000.00 | Wachovia | Wachovia - 2000013023629 | Check 107246 |
| 5/3/2007 | Richard Gilbert | $84,677.25 | HSBC | Wachovia - 2000013023629 | Wire |
| 6/8/2007 | R.D. Simpson | $30,000.00 | Wachovia | Wachovia - 2000013023629 | Check 017410 |
| 7/11/2007 | Lung's Consultants, LLC | $13,599.88 | HSBC | Wachovia - 2000013023629 | Check 18000 |
| 8/24/2007 | Lung's Consultants, LLC | $1,200,000.00 | HSBC | Neuberger/Lehman - 55002367016 | Wire |
| 8/24/2007 | R.D. Simpson | $1,783,300.00 | Wachovia | Neuberger/Lehman - 55002367016 | Wire |
| 8/24/2007 | Richard Gilbert | $1,700.00 | HSBC | Neuberger/Lehman - 55002367016 | Wire |
| 8/24/2007 | Richard Gilbert Family Trust | $85,000.00 | HSBC | Neuberger/Lehman - 55002367016 | Wire |
| 8/27/2007 | Lung's Consultants, LLC | $42,116.99 | HSBC | Wachovia - 2000013023629 | Check 18023 |
| 1/4/2008 | Lung's Consultants, LLC | $140,000.00 | HSBC | Wachovia - 2000013023629 | Check 18091 |
| 1/25/2008 | Lung's Consultants, LLC | $36,000.00 | HSBC | Wachovia - 2000013023629 | Check 18102 |
| 8/5/2008 | Lung's Consultants, LLC | $12,000.00 | HSBC | Wachovia - 2000013023629 | Check 18121 |
| 8/8/2008 | Lung's Consultants, LLC | $22,000.00 | HSBC | Wachovia - 2000013023629 | Check 18125 |