UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
LYMAN COMMERCE SOLUTIONS, INC.,                         12-cv-4398

                                        Plaintiff,        **OPINION**


-against-


CONRAD LUNG, RICHARD GILBERT,
LUNG'S CONSULTANTS LLC, R.D.
SIMPSON, INC., THE RICHARD
GILBERT FAMILY TRUST, and IRWIN
LEVY AS TRUSTEE OF THE RICHARD
GILBERT FAMILY TRUST,

                                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

On June 5, 2012, plaintiff, Lyman Commerce Solutions, Inc. ("LCS"), commenced

this action to recover payments allegedly made by MUDD USA LLC ("MUDD") to

defendants Richard Gilbert, R.D. Simpson, Inc., the Richard Gilbert Family Trust, and

Irwin Levy as Trustee of the Richard Gilbert Family Trust ("the Gilbert defendants") and

the Lung defendants, Conrad Lung, former president of MUDD, and Lung Consultants,

LLC – an entity which Lung allegedly controlled.

Plaintiff alleges that these payments, which were made during a pending court

proceedings by MUDD to its officers and owners located in New York, were fraudulent

conveyances under New York Debtor and Creditor Law ("DCL").

Count One alleges that the Gilbert defendants are liable for constructive fraudulent

conveyance, under DCL § 273-a. Count Two alleges that the Lung defendants violated

DCL § 276. Count Three alleges that the Lung defendants are liable for plaintiff's attorneys

fees pursuant to § 276-a. Count Four alleges an "alter ego" theory of liability against the Lung defendants with respect to alleged fraudulent conveyance transfers made to Lung Consultants. Count Five alleges that Gilbert should be held individually liable for the obligations of each of the remaining Gilbert defendants based upon an "alter ego" theory as well.

On September 7, 2012, the Gilbert defendants moved to dismiss the complaint, arguing that Iowa (where LCS resides) or Delaware (where MUDD was formed) law governs the dispute; that a default judgment entered in Iowa is now a nullity because, upon MUDD's corporate dissolution in Delaware, the Iowa court was deprived of jurisdiction over defendants; and finally, that plaintiff has failed to plead lack of fair consideration as required under DCL § 273-a and thus cannot state a claim for relief under that section.

That same day, the Lung defendants moved to dismiss the complaint on all of the same grounds asserted by the Gilbert defendants, but also on the additional ground that plaintiff has failed to join MUDD, which it claims is a necessary party in this action under Fed. R. Civ. P. 19(a).

The motions to dismiss are denied in their entirety.

**THE COMPLAINT**

The following facts are drawn from the complaint and are assumed true for the purpose of resolving these motions.

**The Parties**

Plaintiff, LCS, provides online commerce technology, marketing and design services. MUDD USA, LLC – a now defunct company, incorporated in Delaware – was once in the field of manufacturing, among other things, women's jeans. MUDD filed for dissolution in August of 2008.

Two defendants in this action were once managers and officers of MUDD. One, Richard Gilbert, was the CEO of MUDD and was also a manager on MUDD's board of managers. The other, Conrad Lung, was the President of MUDD and a manager on its board of managers as well. The Gilbert Family Trust, also a named defendant, was managed by defendant Trustee Irwin Levy.

**The Underlying Litigation**

At a time, LCS provided online commerce services to MUDD pursuant to an agreement between the parties. In early 2006, MUDD defaulted on its payment obligations under the agreement. On February 19, 2007, LCS, in response, filed a law suit against MUDD in the Iowa State District Court seeking money damages for breach of contract. The law suit resulted in a judgment entered against MUDD in the amount of $2,176,049.01 on March 17, 2009. LCS then brought an action

3

against MUDD in New York, which resulted in full recognition of the Iowa judgment by a New York State court on February 24, 2010.

<u>The Fraudulent Transfers</u>

The alleged fraudulent transfers, which took place over an 18 month period that included the Iowa litigation, were carried out by various methods in order to avoid paying the underlying judgment. Between February 2007 and August 2008, the complaint alleges that nearly $4 million of MUDD's funds were funneled from MUDD directly to accounts controlled by Gilbert and Lung or to entities that they owned and controlled. For example, it is alleged that between February 19, 2007 and June 30, 2007, MUDD made salary payments to Gilbert totaling $336,377.25 and to Lung totaling $261,390.00. In addition, MUDD also made two $30,000 payments to R.D. Simpson – a company owned by Gilbert – on April 2, 2007 and again on June 7, 2007.  These transfers were alleged to have been made when MUDD was engaged in no real business operations.

Shortly after these transactions took place, Gilbert and Lung also executed a resolution of MUDD's board of managers, which authorized MUDD to buy the Gilbert's interest in the company. Gilbert executed the so-called buy-out agreement on behalf of himself and R.D. Simpson, and Lung executed it in New York on behalf of MUDD. Thereafter, MUDD made nearly $2 million in transfers to the Gilbert Family Trust and $1,700.00 to Gilbert. Each of these transfers was made from MUDD's New York brokerage accounts to Gilbert defendants' New York accounts. MUDD also allegedly wired $1.2 million from its New York brokerage account directly to Lung's New York checking account. And finally, it is alleged that from 2007-2008 Lung signed and deposited

various checks transferring $265,716.87 from MUDD's New York bank account to New York accounts held by a company that he owned called Lung Consultants. In sum, the complaint alleges that all of these transactions were made with an aim at depleting the funds available to satisfy plaintiff's valid judgment in violation of New York Debtor Creditor Law.

## DISCUSSION

### THE MOTION TO DISMISS

On a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff. Felix the Cat Prods., Inc. v. California Clock Co., 04 Civ. 5714, 2007 WL 1032267 *1 (S.D.N.Y. Mar. 30, 2007).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). By contrast, a pleading that only offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not suffice to withstand a motion to dismiss. Id. If plaintiffs have not carried their claims across the line from conceivable to plausible, their complaint must be dismissed. Twombly, 550 U.S. at 570.

5

## The Fraudulent Conveyance Claims

There is first a dispute over which state's law to apply in this case. Because this is a diversity case brought in New York, New York choice-of-law rules apply. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 497-498 (1941). The first step in this process is to analyze whether any conflict exists between the competing jurisdictions as to the law at issue in the case. Burnett v. Columbus McKinnon Corp., 887 N.Y.S.2d 405, 408 (4th Dep't 2009). If no conflict exists, the law of the forum is applied, here New York law. Tronlone v. Lac d'Amiante Du Quebec, Ltee, 747 N.Y.S.2d 79, 80 (1st Dep't 2002), order aff'd, 760 N.Y.S.2d 96 (2003). If conflicts do exist, New York's substantive choice of law rules would apply. Locke v. Aston, 814 N.Y.S.2d 38, 42 (1st Dep't 2006).

While plaintiff contends that New York law applies, the Gilbert defendants argue that Iowa or Delaware law should govern this dispute. The State of New York has adopted the Uniform Fraudulent Conveyance Act (the "UFCA"). See e.g., In re Sharp Int'l Corp., 403 F.3d 43, 53 (2d Cir. 2005). Iowa and Delaware, by contrast, have adopted the Uniform Fraudulent Transfer Act (the "UFTA"). See e.g., In re Walter, 462 B.R. 698, 705 (N.D. Iowa 2011).

These acts are the same in some ways, but differ in other crucial respects. Plaintiff correctly notes that New York DCL § 276 provides that conveyances made with actual intent to "to hinder, delay or defraud either present or future creditors" are fraudulent. The relevant portions of Iowa and Delaware's fraudulent conveyance statutes are indeed identical to DCL § 276. See Iowa St. § 684.4 (a conveyance is fraudulent when made with "actual intent to hinder, delay, or defraud any creditor of the debtor"); 6 Del. C. § 1304

(same). Thus, since there is no conflict of law with respect to these sections, New York law applies to the actual fraud claims alleged in the complaint.

However, one critical difference between New York and Iowa and Delaware law is whether a plaintiff needs to prove fraudulent intent when the conveyance is made by the debtor during the pendency of a lawsuit. In New York, a plaintiff need not prove that intent; rather, the conveyance is deemed constructively fraudulent simply if it is made (a) without fair consideration; (b) when the person making it is a defendant in an action for money damages; and, (c) the defendant fails to satisfy the judgment. DCL § 273-a.

By contrast, under the UFTA – which is the governing law in Iowa and Delaware – where the debtor was a defendant in a lawsuit when it made the conveyance, a plaintiff must still prove **actual** fraudulent intent, and the debtor's status as a defendant in a pending lawsuit is merely one of eleven factors a court may consider in determining whether a transfer was made "with actual intent to hinder, delay, or defraud any creditor of the debtor." <u>See</u> I.C.A. § 684.4; 6 Del. C. § 1304.

As a result of these differences, a conflict of law exists in this action, which necessitates a choice of law analysis.

<u>The Interest Analysis</u>

Typically where there is a conflict of law in cases involving tort claims, New York applies an "interest analysis" to identify the jurisdiction that has the greatest interest in the litigation based on the occurrences within each jurisdiction, or contacts of the parties with each jurisdiction, that relate to the purpose of the particular law in conflict. <u>Pension</u>

Comm. of Univ. of Montreal Pension Plan v. Banc. of Am. Secs., LLC, 446 F.Supp.2d

163, 192 (S.D.N.Y. 2006). When the law is one which regulates conduct, such as

fraudulent conveyance statutes, see GFL Advantage Fund, Ltd. v. Colkitt, 03 Civ. 1256,

2003 WL 21459716, at *3 (S.D.N.Y. June 24, 2003), "the law of the jurisdiction where the

tort occurred will generally apply because that jurisdiction has the greatest interest in

regulating behavior within its borders," Pension Comm., 446 F.Supp.2d at 192 (quoting

GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d 377, 384 (2d

Cir.2006).) A tort occurs in the place where the injury was inflicted, which is generally

where the plaintiffs are located. Cromer Fin. Ltd. v. Berger, 137 F.Supp.2d 452, 492

(S.D.N.Y.2001)).

Here, defendants argue that Delaware law applies under the "internal affairs"

doctrine. However, courts may still apply the interest analysis even when, as here, a

defendant invokes the "internal affairs doctrine." Drenis v. Haligiannis, 452 F. Supp. 2d

418, 427-28 (S.D.N.Y. 2006). This doctrine generally "recognizes that only one state

should have the authority to regulate a corporation's internal affairs-matters peculiar to the

relationships among or between the corporation and its current officers, directors, and

shareholders-because otherwise a corporation could be faced with conflicting demands."

Edgar v. MITE Corp., 457 U.S. 624, 645, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982).

New York takes a narrower view of the internal affairs doctrine than some other

jurisdictions. In other jurisdictions, there appears to be some tendency, where officers or

directors of a corporation are involved, to make "automatic reference" to the state of

incorporation's laws, without engaging in any weighing of the states' respective interests. In

8

New York, however, "such automatic reference is rejected." <u>Tyco Int'l, Ltd. v. Kozlowski</u>, 756 F. Supp. 2d 553, 560 (S.D.N.Y. 2010)(New York had the greater interest in applying its law to constructive fraud cause of action than place of incorporation, Bermuda); <u>See Norlin v. Rooney, Pace Inc.</u>, 744 F.2d 255, 263-64 (2d Cir. 1984) (rejecting use of internal affairs doctrine in matter of corporate governance of Panamanian corporation where public policy of New York weighed in favor of application of New York law).

In this case, application of the New York interest analysis test reveals that New York's interest in seeing its fraudulent conveyance law applied outweighs the interest of the Limited Liability Company in having its internal relationships governed by the law under which it is organized, especially in light of the fact that plaintiffs are suing in their capacities as judgment creditors in a tort action. The alleged torts largely occurred in New York; the defendants allegedly used New York bank accounts as vehicles to make the fraudulent conveyances; and Lung's alleged shell business was located at his home in New York.

In light of the foregoing, the court finds that New York law governs the fraudulent conveyances alleged in the complaint.

## NEW YORK DEBTOR AND CREDITOR LAW §273-a

Defendants next argue that plaintiff has failed to state a claim under New York Debtor Creditor Law § 273-a. The purpose of § 273–a is to provide a remedy for a creditor who has brought an action for money damages against a party who, after being named as a defendant in that action, conveys assets to a third party for less than fair consideration leaving the ultimate judgment unpaid. <u>Cadle Co. v. Newhouse</u>, 2002 WL 1888716, at *8 (S.D.N.Y. Aug. 16, 2002).

To prevail on a § 273-a fraudulent conveyance claim, plaintiff must allege three elements: (1) the conveyance was made without fair consideration; (2) at the time of transfer, the transferor was a defendant in an action for money damages or a judgment in such action had been docketed against him; and (3) a final judgment has been rendered against the transferor that remains unsatisfied. Lippe v. Bairnco Corp., 229 B.R. 598, 603 (S.D.N.Y. 1999); Dixie Yarns, Inc. v. Forman, 906 F.Supp. 929, 935 (S.D.N.Y. 1995).

There is first a disagreement with respect to the third element, which requires a pleading that there was a "final judgment for the plaintiff." See DCL § 273-a. New York defines a "final judgment" as a judgment that "disposes of all of the causes of action between the parties in the action or proceeding and leaves nothing for further judicial action apart from mere ministerial matters." Burke v. Crosson, 85 N.Y.2d 10, 15 (1995).

Defendants argue that plaintiff has failed to adequately plead the existence of a final judgment. In particular, they contend that the Iowa judgment should be void as a matter of law because, under Delaware law (MUDD's state of incorporation and dissolution) the filing of a certificate of dissolution precludes any further proceedings with respect to a pending civil action against a corporate entity and thereby deprives any court of jurisdiction over that entity.

As a general proposition of Delaware law, "absent statutory authority, no claim may be brought against a dissolved entity." Metro Comm'n Corp. BVI v. Advanced Mobilecomm'n Techs. Inc., 854 A.2d 121, 138 (Del. Ch. 2004). More specifically, both the Delaware Limited Partnership Act and Limited Liability Company Act provide that suit generally may be brought against a limited partnership or limited liability company only

10

*until* the certificate of cancellation is filed. Del.Code Ann. 6, § 18-803(b) (LLC Act) (emphasis added); see Metro Comm'n, 854 A.2d at 138 (discussing LLC Act). Upon plain reading of the statute, the logical inference that this court draws is that Delaware law permits a suit to be maintained against a limited liability company if it is commenced before the company is cancelled.

It is alleged in the complaint that, after defendant filed for dissolution under Delaware law in August of 2008 during the pendency of the Iowa action, the Polk County District Court in Iowa thereafter entered a judgment against MUDD on March 17, 2009 awarding LCS $2,176,264.01. That judgment did not sit idle – indeed, it was also afforded full faith and credit by a New York State court. It is therefore beyond cavil to argue in this case that the Iowa court judgment against defendants was not final because defendants filed a certificate of dissolution that deprived the Iowa court of jurisdiction and rendered the judgment a legal nullity. Baker by Thomas v. Gen. Motors Corp., 522 U.S. 222, 233, 118 S. Ct. 657, 663-64, 139 L. Ed. 2d 580 (1998) ("final judgment in one state, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land"). To allow such an outcome would encourage the avoidance of judgments through the use of the dissolution process and in contravention of the "winding up" requirements under the Delaware law.[1]

---

[1] During the winding up of affairs, the dissolving entity "shall make such provision as will be reasonably likely to be sufficient to provide compensation for any claim against the limited liability company which is the subject of a pending action, suit or proceeding to which the limited liability company is a party." Del. Code Ann. tit. 6, § 18-804 (2013).

Accordingly, the court finds that plaintiff has alleged facts sufficient to support the existence of a final judgment.

## LACK OF CONSIDERATION

Additionally, defendants argue that plaintiff has failed to plead lack of "fair consideration as required under Section 276. Lack of fair consideration can be established by showing either a lack of "fair equivalent" property or a lack of "good faith" on the part of the transferee. DCL § 272 (defining "fair consideration"); see Silverman v. Sound Around, Inc. (In re Allou Distribs., Inc.), 404 B.R. 710, 716 (Bankr. E.D.N.Y. 2009).

It is clear, however, that New York courts have held that payments to a debtor corporation's shareholders, officers, or directors are presumptively deemed not to be transfers for fair consideration. See Farm Stores, Inc. v. School Feeding Corp., 477 N.Y.S.2d 374, 378 (1984); see also Atlanta Shipping Corp. v. Chemical Bank, 818 F.2d 240, 249 (2d Cir.1987) ("In general, repayment of an antecedent debt constitutes fair consideration unless the transferee is an officer, director, or major shareholder of the transferor"); Farm Stores, Inc. v. Sch. Feeding Corp., 102 A.D.2d 249, 254 (1985) (holding that preferential transfers to directors, officers and shareholders of insolvent corporations in derogation of the rights of general creditors do not fulfill the good-faith requirement of the Debtor and Creditor Law).

Here, the complaint alleges that Gilbert and Lung served on MUDD's board of managers when the conveyances were made. Gilbert and the two other Gilbert Defendants, R.D. Simpson and the Richard Gilbert Family Trust, were also allegedly the owners of MUDD. Conrad Lung, in addition to being MUDD's President and serving on its Board

12

when the conveyances were made, also allegedly had an ownership interest in MUDD. In their position as members of MUDD's board of managers, it is also alleged that Gilbert and Lung transferred millions of dollars to themselves and received more than half a million dollars in "salary" during the pendency of the Iowa action and after MUDD had ceased all business operations. Between February 2007 and August 2008, the bulk of MUDD's assets were allegedly transferred to offshore bank accounts controlled by unknown individuals or entities. It is also alleged that plaintiff has been unable to obtain information about these accounts or the purported reason for these transfers. Moreover, plaintiff alleges that nearly $4 million of MUDD's funds were transferred from MUDD directly to accounts controlled by Gilbert and Lung or to entities that they owned and controlled. More particularly, it is alleged that between February 19, 2007 and June 30, 2007, MUDD made periodic salary payments to Gilbert totaling $336,377.25 and to Lung totaling $261,390.00. In addition, MUDD also allegedly transferred $30,000 to R.D. Simpson on April 2, 2007 and $30,000 to R.D. Simpson on June 7, 2007.  The complaint alleges that these payments were made when MUDD was not engaged in real business operations.

Pursuant to a certain buyout agreement, on or about August 24, 2007, it is alleged that MUDD made the following transfers: $1,783,000.00 to R.D. Simpson; $85,000.00 to the Richard Gilbert Family Trust; and $1,700.00 to Gilbert.

Shortly after these transactions, it is alleged that MUDD also wired $1.2 million from its New York brokerage account to a New York checking account controlled by Lung and owned by Lung's Consultants. Between July 11, 2007 and August 8, 2008, Lung

13

allegedly signed and deposited checks transferring $265,716.87 from MUDD's New York bank account to Lung's Consultants' New York accounts. Each of these transfers was made by a check signed by Lung on behalf of MUDD and endorsed by Lung as the depositor. The complaint alleges that all of these transfers to Lung's Consultants were made without fair consideration as defined by the New York Debtor and Creditor Law and with the actual intent to hinder, delay or defraud plaintiff by rendering MUDD unable to pay its obligations to plaintiff.

The Gilbert defendants first argue that the payments to them totaling $1,870,000, made in connection with a Settlement and Redemption Agreement, were for fair consideration. The Gilbert defendants also contend that before filing suit, plaintiff had copies of a Settlement and Redemption Agreement, Operating Agreement and Financial Statements. As a result, they argue that plaintiff knew that the Gilbert defendants had a contractual right to "put" their units in July 2007 at their Fair Market Value (as defined in the Operating Agreement). The Gilbert defendants further argue that certain financial statements, prepared by MUDD's auditors, showed that the payments made for the certain membership units were for fair consideration. Similarly, it is argued that MUDD received fair consideration for the salary payments made to Gilbert, which were contractually mandated by the Employment Agreement.

The Lung defendants argue that plaintiff knew that MUDD paid Mr. Lung $261,390.00 in fair wages for his work in winding up the affairs of the company prior to filing the Certificate of Cancellation.  Further, they contend that  there was considerable work to be done during this period including, but not limited to, reconciling account

receivables and account payables and tax reporting, for which Lung was paid his then existing salary.

When read in concert, the allegations in the complaint are more than adequate to support the conclusion that plaintiff has adequately pled lack of consideration. Indeed, the allegation that Gilbert and Lung each received hundreds of thousands of dollars in salary payments for serving as officers of an entity that engaged in no legitimate business operations is, standing on its own, sufficient to plead the absence of fair consideration. The parties have conducted very little discovery in this case, and, at this point, plaintiff is entitled to all reasonable inferences based upon the allegations. Here, there is a possibility that defendants engaged in fraudulent conduct during the pendency of the Iowa action in an effort to avoid payment of its legal obligations. The court therefore declines to grant defendants' respective motions on the ground that plaintiff has failed to plead lack of consideration in order to establish a claim under DCL § 273.

## MUDD'S PRESENCE AS A NECESSARY PARTY

Finally, the Lung defendants independently argue that the complaint should be dismissed because defendant has failed to join a necessary party.

Fed. R. Civ. P.19(a)(1) governs the necessary joinder of parties in a civil action and provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

15

**(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

**(i)** as a practical matter impair or impede the person's ability to protect the interest; or

**(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The only necessary parties to a fraudulent conveyance action are the transferee and any other party who may claim an interest in the property conveyed. See United States v. Mazzeo, 98-CV-3060 (JS), 2001 WL 393671 (E.D.N.Y. Jan. 10, 2001).

The Lung defendants argue that, in light of the fact that the Iowa judgment should be deemed a legal nullity, plaintiff is absolutely obligated to join MUDD as a defendant in the instant action. As discussed above, the court finds that the Iowa judgment is neither void nor otherwise a legal nullity for purposes of resolving the motion to dismiss. Further, MUDD is clearly a dissolved entity. Though its successors – who are not mentioned in the complaint if they exist – may at some future point have an interest in the transfers, MUDD has no interest. Thus, with respect to MUDD, defendants will not be subject to multiple or otherwise inconsistent obligations. Nor, moreover, is it apparent that complete relief cannot be afforded to the parties in MUDD's absence.

Thus, the court finds that the Lung defendant's parasitic Rule 19(a) attack fails as well.

CONCLUSION

For the foregoing reasons, the motions to dismiss the complaint are denied in their entirety.

This opinion will resolve docket item numbers 21 and 25.

Dated: New York, New York
      August 30, 2013

_____
Thomas P. Griesa
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __8-30-13__

17