UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYMAN COMMERCE SOLUTIONS, INC.,<br><br>Plaintiff,<br><br>-against-<br><br>CONRAD LUNG, RICHARD GILBERT, LUNG'S CONSULTANTS LLC, R.D. SIMPSON, INC., THE RICHARD GILBERT FAMILY TRUST, and IRWIN LEVY AS TRUSTEE OF THE RICHARD GILBERT FAMILY TRUST,<br><br>Defendants. | Case No.: 12 Civ 4398 (TPG) |

| | |
|---|---|
| CONRAD LUNG and LUNG'S CONSULTANTS LLC<br><br>Third-Party Plaintiffs,<br><br>-against-<br><br>DONALD JACKSON and MARC MAZUR,<br><br>Third-Party Defendants. | |

DEFENDANT CONRAD LUNG AND LUNG'S CONSULTANTS LLC'S ANSWER,
AFFIRMATIVE DEFENSES AND THIRD-PARTY CLAIMS

Defendants Conrad Lung ("Mr. Lung") and Lung's Consultants LLC ("Consultants," and

together with Mr. Lung are referred to herein as the "Lung Defendants") answer Plaintiff's

Complaint in this action, by and through its attorneys, Salon Marrow Dyckman Newman &

Broudy, LLP, as follows:

## NATURE OF THE ACTION[1]

1. Deny the allegations contained in Paragraph 1 of the Complaint, except to admit that at certain points in time Richard Gilbert was the CEO of MUDD and Mr. Lung was the President of MUDD, and further to admit that MUDD has been lawfully dissolved.

2. Deny knowledge or information sufficient to for form a belief as to the truth of the allegations contained in Paragraph 2 of the Complaint.

3. Deny the allegations contained in Paragraph 3 of the Complaint.

## THE PARTIES

4. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint.

5. Deny the allegations contained in Paragraph 5 of the Complaint, except to admit that MUDD was a limited liability company formed under the laws of the State of Delaware with its principal place of business in the State, City and County of New York, and filed a certificate of cancellation with the Delaware Department of State, Division of Corporations on or about August 5, 2008.

6. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the Complaint, except to admit that Richard Gilbert was a member of MUDD, and at certain points in time was MUDD's Chief Executive Officer and served on the Board of Managers.

7. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint.

8. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint.

---

[1] All headings are repeated from the Complaint, and are inserted into this pleading purely for ease of reference.

9.  Deny the allegations contained in Paragraph 9 of the Complaint, except to admit that at a certain point in time Mr. Lung resided in the City, County and State of New York, was the President of MUDD and served on the Board of Managers.

10. Deny the allegations contained in Paragraph 10 of the Complaint, except to admit that Consultants is a limited liability company formed under the laws of the State of New York.

## JURISDICTION AND VENUE

11. Admit the allegations contained in Paragraph 11 of the Complaint.

12. Deny the allegations contained in Paragraph 12 of the Complaint, to the extent that Plaintiff alleges any fraudulent conveyances to have occurred, but admit the remaining allegations contained in Paragraph 12 of the Complaint.

## FACTUAL BACKGROUND

13. Deny the allegations in Paragraph 13 of the Complaint, to the extent that they assert that "a group of investors led by [Mr.] Lung" wished to acquire a majority interest in MUDD, an investment group "led by [Mr.] Lung" purchased an 80% interest in the new MUDD, or that the new MUDD was controlled by "[Mr.] Lung and his investment group," and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 13 of the Complaint.

14. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint.

15. Deny the allegations contained in Paragraph 15 of the Complaint, except to admit that certain MUDD checks bear the address of an apartment at which Mr. Lung resided.

3

16. Deny the allegations contained in Paragraph 16 of the Complaint, except to admit that in 2007 Consultants received payments and transfers into its account totaling more than $1.3 million dollars, purely as an agent or conduit for the transferor's intended transferees of such monies.

17. Deny the allegations contained in Paragraph 17 of the Complaint.

18. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint.

19. Admit that in or about April 2006, MUDD announced that it had entered into an agreement with Iconix Brand Group, Inc. ("Iconix") to sell its U.S. intellectual property, but under the deal MUDD retained a license to manufacture MUDD jeans for 2-3 years and further retained its non U.S. intellectual property.

20. Admit that a default judgment was entered against it in Iowa District Court for Polk County in the amount of $2,176,049.01, and specifically note that neither Mr. Lung, nor Consultants was named in the Iowa Action, controlled the defense of the Iowa Action, or that their interests were fairly or adequately represented by MUDD in the Iowa Action.

21. Admit the allegations contained in Paragraph 21 of the Complaint.

22. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint.

23. Admit the allegations contained in Paragraph 23 of the Complaint, except to note that the quoted section does not accurately restate the punctuation contained in the statute.

24. Deny that MUDD ceased commercial operations on or about February 6, 2007, and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 24 of the Complaint.

4

25. Deny the allegations contained in Paragraph 25 of the Complaint.

26. Deny the allegations contained in Paragraph 26 of the Complaint, except to deny knowledge or information sufficient to form a belief as to the truth of the allegation as to the amount of monies paid to Richard Gilbert, and admit the allegations as to the specific amount of money paid to Mr. Lung.

27. Admit the allegations contained in Paragraph 27 of the Complaint.

28. Deny the allegations contained in Paragraph 28 of the Complaint.

29. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Complaint.

30. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint.

31. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Complaint.

32. Deny the allegations contained in Paragraph 32 of the Complaint.

33. Admit that Mr. Lung executed a resolution, along with Richard Gilbert, Wing Kwok, Stanley Kwok and Yiu Ming Wan, but deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 33 of the Complaint.

34. Admit the allegations contained in Paragraph 34 of the Complaint, except to note that the referenced agreement was also signed by a total of twelve (12) parties.

35. Admit the allegations contained in Paragraph 35 of the Complaint.

36. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Complaint.

37. Deny knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 37 of the Complaint, except to admit that certain transfers were made.

38. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of the Complaint, except to admit that Richard Gilbert did at some time resign from MUDD.

39. Deny the allegations contained in Paragraph 39 of the Complaint.

40. Admit the allegations contained in Paragraph 40 of the Complaint, but deny knowledge or information sufficient to form a belief as to the accuracy of such information.

41. Deny the allegations contained in Paragraph 41 of the Complaint, except to admit that the $1.2 million was wired into Consultants' account purely as an agent or conduit for the transferor's intended transferees of such monies, and Consultants did in-fact immediately pass such monies on to the intended transferees of the transferor.

42. Denies knowledge or information as to each specific check and payment, but admits that Mr. Lung signed certain checks on behalf of MUDD paying Consultants for consulting services that Mr. Lung provided to MUDD through Consultants, and reimbursement of expenses incurred by Mr. Lung and Consultants by and on behalf of MUDD.

43. Deny the allegations contained in Paragraph 43 of the Complaint.

44. Deny the allegations contained in Paragraph 44 of the Complaint.

45. Admit the allegations contained in Paragraph 45 of the Complaint, but deny knowledge or information sufficient to form a belief as to the accuracy of such information.

### AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION
(NY DCL Section 273-a)

46. The Lung Defendants repeat and reassert each of their answers to the allegations set forth above, as if fully set forth at length herein.

6

47. Deny knowledge or information as to whether the referenced action was continuously pending against MUDD, but admit the remaining allegations contained in Paragraph 47 of the Complaint.

48. Deny the allegations contained in Paragraph 48 of the Complaint, to the extent that Plaintiff alleges that the referenced transfers were made by MUDD to the parties listed on Table A, or that Consultants was the actual or intended transferee of such monies.

49. Deny the allegations contained in Paragraph 49 of the Complaint.

50. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 50 of the Complaint.

51. Deny the allegations contained in Paragraph 51 of the Complaint.

52. Deny the allegations contained in Paragraph 52 of the Complaint.

53. Deny the allegations contained in Paragraph 53 of the Complaint.

54. Deny the allegations contained in Paragraph 54 of the Complaint.

55. Deny the allegations contained in Paragraph 55 of the Complaint.

56. Deny the allegations contained in Paragraph 56 of the Complaint.

## AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION
### (NY DCL 276)

57. The Lung Defendants repeat and reassert each of their answers to the allegations set forth above, as if fully set forth at length herein.

58. Deny the allegations contained in Paragraph 58 of the Complaint.

59. Deny the allegations contained in Paragraph 59 of the Complaint.

60. Deny the allegations contained in Paragraph 60 of the Complaint.

## AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION
### (NY DCL 276-A)

61. The Lung Defendants repeat and reassert each of their answers to the allegations set forth above, as if fully set forth at length herein.

62. Deny the allegations contained in Paragraph 62 of the Complaint.

63. Deny the allegations contained in Paragraph 63 of the Complaint.

64. Deny the allegations contained in Paragraph 64 of the Complaint.

## AS AND FOR PLAINTIFF'S FOURTH CAUSE OF ACTION
(Alter Ego Liability Against Lung for Fraudulent Conveyances to Lung's Consultants)

65. The Lung Defendants repeat and reassert each of their answers to the allegations set forth above, as if fully set forth at length herein.

66. Deny the allegations contained in Paragraph 66 of the Complaint, except to admit that Mr. Lung is a managing member of Consultants, and that its members were Mr. Lung and family members.

67. Deny the allegations contained in Paragraph 67 of the Complaint, except to admit that Mr. Lung may have signed certain of the referenced checks,

68. Deny the allegations contained in Paragraph 68 of the Complaint.

69. Deny the allegations contained in Paragraph 69 of the Complaint.

70. Deny the allegations contained in Paragraph 70 of the Complaint.

## AS FOR PLAINTIFF'S FIFTH CAUSE OF ACTION
(Alter Ego Liability Against Gilbert for Fraudulent Conveyances to R.D. Simpson, Inc. and the Richard Gilbert Family Trust)

71. The Lung Defendants repeat and reassert each of their answers to the allegations set forth above, as if fully set forth at length herein.

72. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 72 of the Complaint.

73. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 73 of the Complaint.

74. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 74 of the Complaint.

75. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 75 of the Complaint.

76. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 76 of the Complaint.

77. Deny the allegations contained in Paragraph 77 of the Complaint.

78. Deny the allegations contained in Paragraph 78 of the Complaint.

## AFFIRMATIVE DEFENSES

1.   The underlying Iowa Default Judgment is ineffective, and no subsisting judgment against MUDD remains.

2.   Even if the Iowa Default Judgment is valid and binding against MUDD, it has no effect as against Mr. Lung or Consultants – which have an absolute right to defend the claims in the underlying Iowa Action that serve as a predicate to the claims in this action.

3.   All or a portion of the claims upon which the Iowa Default Judgment is based are barred, as the contract under which Plaintiff Lyman was working was terminated.

4.   All or a portion of the claims upon which the Iowa Default Judgment is based are barred, as by Plaintiff Lyman's own allegations, all or a portion of the alleged work was purportedly performed after Plaintiff Lyman alleges MUDD discontinued its operations.

9

5. Upon information and belief, the Iowa Action was not continuously pending, but instead was dismissed by the Court during all or a portion of time Plaintiff Lyman alleges that the fraudulent transfers occurred.

6. Neither Mr. Lung, nor Consultants controlled or is responsible for making any of the allegedly fraudulent transfers.

7. All or a portion of the alleged transfers to Consultants were not made directly to Consultants, but instead were transfers to other entities which are not named in this case, and against which Plaintiff Lyman must, as a predicate to its claims in this case, establish that such transfers were in-fact fraudulent.

8. Whether MUDD was the transferor of the allegedly fraudulent transfer of $1.2 million, or any of the intermediate transferees was the transferor of the allegedly fraudulent transfer of such monies to Consultants, Consultants was not the actual or intended transferee of such monies.

9. Consultants acted purely as an agent or conduit for the transferor's transfer of $1.2 million to the intended transferees, and did in-fact immediately pass such monies on to the intended transferees of the transferor.

10. Consultants did not benefit in any way from the allegedly fraudulent transfers purportedly made to it.

11. As to the allegedly fraudulent transfer of $1.2 million to Consultants, Mr. Lung did not benefit in any way from or receive such monies, other than the $60,000 that was transferred by Consultants to Mr. Lung as a member of Lung Investment Holding LLC and for which fair value was given.

12. The $261,390.00 in wages that MUDD allegedly paid to Mr. Lung between February 2007 and June 2007 as part of its payroll and payment of wages to others like Maggie Lo, Feida Loyola and Celeste Massa (none of whom are alleged insiders) was for the significant work Mr. Lung performed by and on behalf MUDD, while MUDD continued to operate.

13. The $265,716.87 in consulting fees paid to Consultants was paid for legitimate services performed on behalf of MUDD, and expenses incurred and disbursements made by and on behalf of MUDD and for which MUDD received fair value.

14. Mr. Lung is not the alter ego of Consultants.

15. As Consultants did not benefit in any way from the allegedly fraudulent transfers purportedly made to it, Consultants cannot be liable in damages and, therefore, even if Mr. Lung is the alter ego of Consultants, Mr. Lung cannot be liable to Plaintiff in damages on such a theory.

16. The Conrad Lung Qualified Personal Residence Trust, and the Yin Yee Lung Qualified Personal Residence Trust are necessary parties to this action.

17. Sino Legend Limited, a British Virgin Islands limited company, TFM Holdings Corporation, a Delaware corporation, Donald Jackson, Marc Mazur and Lau Ying Wah (Frank Lau) are all necessary parties to this action.

WHEREFORE, Conrad Lung and Lung's Consultants LLC (Consultants) respectfully request the Court enter Judgment dismissing Plaintiff Lyman's claims in their entirety, with prejudice, together with such other and further relief as the Court deems just and reasonable.

## THIRD-PARTY COMPLAINT

1. Third Party Plaintiffs Mr. Lung and Lung's Consultants LLC (Consultants), bring this third-party action against Third-Party Defendants Donald Jackson and Marc Mazur for indemnification, breach of the operating agreement and contractual indemnification and recalculation of the income and distributions to the members of Lung Investment Holding LLC ("LIH"), a limited liability company organized under the laws of the State of Delaware.

## THE PARTIES

2. Third-Party Plaintiff Conrad Lung is an individual domiciled in New York, New York, a member of LIH, an alleged transferee of certain transfers Plaintiff Lyman claims to have been fraudulent, and the alleged alter-ego of Lung's Consultants LLC.

3. Third-Party Plaintiff Lung's Consultants LLC is a limited liability company organized under the laws of the State of New York, and an alleged transferee of certain transfers Plaintiff Lyman claims to have been fraudulent.

4. Third-Party Defendant Donald Jackson is an individual, residing at 949 Park Avenue, New York, New York 10028, and a member of LIH.

5. Third Party Defendant Marc Mazur is an individual, residing at 40 Beech Tree Lane, Pelham, New York 10803, and a member of LIH.

## JURISDICTION AND VENUE

6. Pursuant to 28 U.S.C. Section 1332(a), this Court has supplemental jurisdiction over this third-party action.

7. Venue exists in this Court pursuant to 28 U.S.C. Section 1391(b), as Third-Party Defendants reside in the State of New York and the County of New York, and the wrongdoing Plaintiff alleges, and which supports this third-party action, occurred in the State of New York.

## BACKGROUND

8.  The predecessor to MUDD (USA) LLC ("MUDD") was MUDD, LLC and Richard Gilbert and his related entities owned a majority interest in the predecessor.

9.  In or about 2003-2004, Donald Jackson and Marc Mazur represented MUDD, LLC in its search for equity investors, and at about the same time, Mr. Lung began advising Donald Jackson and Marc Mazur in their search for investors.

10. Eventually, Donald Jackson, Marc Mazur and Mr. Lung decided to focus on finding an overseas investor in the MUDD, LLC business, and in addition to working on this with Donald Jackson and Marc Mazur, Mr. Lung reached out to Lau Ying Wah (Frank Lau) – who provided him with additional contacts in China.

11. Donald Jackson, Marc Mazur and Mr. Lung were successful in finding an investor, and in 2004 a group of overseas companies and investment groups ultimately participated in a recapitalization of MUDD, LLC – wherein MUDD (USA) LLC became the successor business.

12. As part of the recapitalization of MUDD, Tackfat Manufacturing Company, a company publicly listed on the HKSE ("Tackfat"), led by its Chairman Wing Kwok, acquired 72% of all membership interests in MUDD, and 78% of all voting membership interests in MUDD by and through Sino Legend Limited, a British Virgin Islands limited company (the British holding company) ("Sino") and TFM Holdings Corporation, a Delaware corporation (the U.S. holding company) ("TFM").

13. In order to secure the investment banking and consulting assistance of Donald Jackson and Marc Mazur in connection with the recapitalization, and later a potential profitable short-term exit from MUDD, and further to secure Mr. Lung's industry and management expertise, and the ability to communicate with both the domestic and foreign parties related to

the new MUDD, Tackfat offered Donald Jackson, Marc Mazur and Mr. Lung, and they accepted

a minority interest in Sino – representing a very indirect 5% interest in MUDD (the "5%

Interest").

14. The 5% Interest was held by Lung Investment Holding LLC, a company organized

under the Delaware Limited Liability Company Act ("LIH").

15. The members of LIH include Mr. Lung, Yin Yee Lung, the Stephanie Y. Lung

Trust of 2004, the Jonathan Y. Lung Trust of 2004, the Jennifer Y. Lung Trust of 2004, Donald

Jackson and Marc Mazur.

16. In addition, Mr. Lung entered into a separate written agreement with Frank Lau,

agreeing to have LIH pay over to Frank Lau any monies that Mr. Lung would be entitled to

receive in connection with his interest in LIH that derived from LIH's indirect interest in

MUDD.

17. At the end of 2004 or early 2005 (after the recapitalization), Mr. Lung was made the

President of MUDD.

18. Mr. Lung continued to work for MUDD through 2007-2008, first in his individual

capacity, and later as a consultant through Consultants – at which time he assisted with the

"winding up" of the business.

19. The recapitalization plan/strategy was to increase MUDD's overseas sales by

leveraging Tackfat's presence in China. Unfortunately, the wholesale jeans market turned, and

MUDD's domestic revenue dropped precipitously. In order to get out from under its leveraged

debt, MUDD looked for a buyer of MUDD's most valuable asset – its intellectual property.

20. In 2006, MUDD entered into an agreement with Iconix Brand Group, Inc. ("Iconix") to sell (only) its U.S. intellectual property, and under the deal MUDD retained a license to manufacture MUDD jeans for 2-3 years.

21. As part of an effort to market the sale of MUDD, Richard Gilbert, Donald Jackson, Marc Mazur, Mr. Lung and Tackfat's investment bankers all asked Kwok to provide detailed retail figures – separated from overall corporate earnings – in order to value the company for an exit by all parties. Kwok refused to cooperate. Instead, he countered with an offer to buy-back Richard Gilbert and his group's interest, as well as LIH's indirect interest in MUDD.

22. Kwok wanted to control the entire company, particularly the China retail business, without oversight or questioning by others.

23. In light of the questionable results Tackfat obtained in opening up MUDD retail outlets in China, and the little transparency it showed in the work Tackfat was doing, LIH agreed to cooperate with Kwok's offer of a divestment/buyout.

24. Shortly thereafter, Kwok found a buyer for MUDD's manufacturing operations (which happened to be one of Tackfat's customers). In February 2007, MUDD closed on a sale of its manufacturing operations to AJ Holdings Group, LLC ("AJ"). At about the same time, Kwok carried out its divestment/buyout of Richard Gilbert and his group and LIH – which held an indirect interest in MUDD through Sino, which in turn, apparently, had an agreement with TFM concerning its interest in MUDD.

25. As set forth in a written authorization, the members and holders of a beneficial interest in LIH authorized Mr. Lung to agree upon the redemption of LIH's interest on the following terms:

> The undersigned, constituting all of the record and beneficial owners of Lung Investment Holding LLC ("LIH"), a Delaware limited liability company, hereby consent to the

execution and delivery of an agreement to sell the shares of Sino Legend Limited owned by LIH substantially in the form attached hereto among LIH, Conrad Lung ("Conrad"), Mudd (USA) LLC, Sino Legend Limited, City Winner Limited, TFM Holdings Corporation and Mudd Far East (Holdings) Ltd. (the "Agreement") with such changes as Conrad shall agree upon in his sole discretion; provided, however, the purchase price for the Shares (as defined in the Agreement) shall not be reduced below One Million ($1,000,000) Dollars without the consent of the undersigned who beneficially own a majority of the interests in LIH.

(A copy of the redemption agreement between Sino and LIH, as well as the referenced authorization are attached hereto at Exhibit A).

26. Pursuant to the above authorization, a deal was reached for Sino's redemption of LIH's interest in Sino for the sum of $1.2 million dollars. This deal was a discount on the book value of LIH's interest. Sino's redemption of LIH's interest was to be funded by MUDD's redemption of Sino's interest in MUDD.

27. At the time, neither Sino, nor LIH had a bank or brokerage account in the United States. So, purely as an accommodation to both parties, and for absolutely no benefit to Consultants or Mr. Lung, individually, Consultants agreed to Sino directing and MUDD transferring to Consultants those monies which represented a redemption of Sino's interest in MUDD, and further Sino's redemption of LIH's interest in Sino – all of which Consultants later distributed to the members and holders of beneficial interests in LIH.

28. Consultants served as purely an agent or conduit for this transaction, and nothing more. It was not the actual or intended transferee of the monies. Indeed, Consultants' August 2007 bank statement confirms that, after receiving a wire from MUDD's Neuberger Bergman account in the amount of $1.2 million dollars on August 24, 2007 (the "$1.2 million transfer"), on August 27, 2007: (a) $385,950 was, at the direction of Frank Lau, wired to a corporate account at HSBC Bank in China; (b) $317,526 was, at the direction of Donald Jackson, wired to a joint account for Donald Jackson and Lisa Jackson at Deutsche Bank in New York; and (c)

16

$160,145 was, at the direction of Marc Mazur, wired to an account for Marc Mazur Consultants, Inc. at JPMorgan Chase Bank in New York. (A copy of Consultants' August 2007 bank statement and related wire confirmations is attached hereto as Exhibit B).

29. The August 2007 bank statement further reflects the withdrawal of $300,000 for the purpose of distributing $60,000 each to Mr. Lung, Yin Lung, Stephanie Y. Lung, as the beneficiary of the Stephanie Y. Lung Trust of 2004, Jonathan Y. Lung, as the beneficiary of the Jonathan Y. Lung Trust of 2004, and Jennifer Y. Lung, as the beneficiary of the Jennifer Y. Lung Trust of 2004. Moreover, the 2007 K-1s that LIH issued confirm that the described payments were distributions by LIH to its members and holders of beneficial interests LIH. (Copies of the K-1s are attached hereto as Exhibit C).

## FIRST CLAIM
### (Indemnification of Lung's Consultants LLC)

30. Third-Party Plaintiffs repeat and reassert the allegations contained in the above paragraphs as if more fully set forth at length herein.

31. Consultants agreed to merely act as an agent through which MUDD could transfer monies in respect of its redemption of Sino's interest, and Sino could transfer monies in respect of its redemption of LIH's shares in Sino and LIH could then distribute same to members and holders of beneficial interests in LIH.

32. Plaintiff alleges that the $1.2 million transfer was a fraudulent conveyance, pursuant to New York's Debtor and Creditor Law, and seeks to avoid the $1.2 million transfer and hold Mr. Lung personally responsible for the $1.2 million transfer, as the alleged alter ego of Consultants.

33. To the extent that Consultants is liable for any of the $1.2 million transferred by either MUDD or Sino, such liability was caused by transfers made to, intended to be received by and actually received by transferees Don Jackson and Marc Mazur.

34. Consultants was not the intended transferee of the $1.2 million transfer, and did not have the right to, and did not in-fact put such monies to its own use.

35. Third-Party Defendants Don Jackson and Marc Mazur were the intended and actual transferees of $477,671 of the $1.2 million transfer – from which they benefitted.

36. As such, Third-Party Defendants Don Jackson and Marc Mazur are responsible for indemnifying Consultants for any liability and losses suffered as a result of acting purely as an agent or conduit for the transfer of $477,621 to Don Jackson and Marc Mazur – who were the intended and actual transferees of the monies and benefitted from such monies.

## SECOND CLAIM
### (Breach of the Operating Agreement)

37. Third-Party Plaintiffs repeat and reassert the allegations contained in the above paragraphs as if more fully set forth at length herein.

38. Section 2.6(B) of the LIH Operating Agreement provides for liability of one member to other members, where "such Member personally gained in fact a financial profit or other advantage to which the Member was not legally entitled."

39. To the extent that the $1.2 million transfer is avoided and/or Consultants is liable for any monies transferred by either MUDD or Sino, and which was intended to be received and actually received by transferees Don Jackson and Marc Mazur, Don Jackson and Marc Mazur will have benefitted from such allegedly unlawful transfers to the detriment of Mr. Lung -- in violation of the LIH Operating Agreement.

18

40. Simply put, if the $1.2 million transfer is avoided and/or Consultants is liable for same, there was never any money available for LIH to distribute to its members, and the $477,621 intended to be and actually received by transferees Don Jackson and Marc Mazur must be disgorged and a new proper accounting must be performed for LIH for the relevant time period.

## THIRD CLAIM
### (Indemnification of Mr. Lung Pursuant to the Operating Agreement)

41. Third-Party Plaintiffs repeat and reassert the allegations contained in the above paragraphs as if more fully set forth at length herein.

42. Section 9.6(a) of the LIH Operating Agreements requires a member to indemnify each other member, and their agent, "from and against any and all losses, claims, damages, expenses or liabilities (including without limitation reasonable attorneys fees) arising from . . . any breach by such indemnifying Member of any of his covenants or obligations set forth herein."

43. To the extent that the $1.2 million transfer is avoided and/or Consultants is liable for any monies transferred by either MUDD or Sino, and which was intended to be received and actually received by transferees Don Jackson and Marc Mazur, and Mr. Lung is held liable for same, Donald Jackson and Marc Mazur will have benefitted from such allegedly unlawful transfers to the detriment of Mr. Lung as a member of LIH – in violation of the LIH Operating Agreement.

44. Accordingly, Third-Party Defendants Donald Jackson and Marc Mazur are obligated to indemnify Mr. Lung for any liability and losses suffered by him as a result of the $1.2 million transfer, pursuant to Section 9.6(a) of the LIH Operating Agreement.

19

WHEREFORE, Third-Party Plaintiffs Conrad Lung and Lung's Consultants LLC demand judgment against Third-Party Defendants, as follows:

(a) On the First Claim by Lung's Consultants LLC against Donald Jackson and Marc Mazur, in the amount of $477,621, plus legal defense/attorney's costs and fees, plus interest.

(b) On the Second Claim by Conrad Lung against Donald Jackson and Marc Mazur, in the amount of $477,621 and a new and correct accounting for Lung Investment Holding LLC for the relevant time period, plus interest.

(c) On the Third Claim by Conrad Lung against Donald Jackson and Marc Mazur, in the amount of $477,621, plus legal defense/attorney's costs and fees, plus interest.

(d) The costs, disbursements, and attorney's fees incurred in defending and prosecuting this action; and

(e) Such other and further relief as the Court deems just and proper.

Dated: New York, New York
       September 13, 2013

SALON MARROW DYCKMAN NEWMAN & BROUDY, LLP


Daniel I. Goldberg (5745)
Salon Marrow Dyckman Newman & Broudy LLP
*Attorneys for Defendants/Third-Party Plaintiffs*
*Conrad Lung and Lung's Consultants, LLC*
292 Madison Avenue
New York, New York 1007
Telephone: 212-661-7100
dgoldberg@salonmarrow.com

20