UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
LYMAN COMMERCE SOLUTIONS, INC.,              12-cv-4398

                    Plaintiff,              **OPINION**


-against-


CONRAD LUNG, RICHARD GILBERT,
LUNG'S CONSULTANTS LLC, R.D.
SIMPSON, INC., THE RICHARD
GILBERT FAMILY TRUST, and IRWIN
LEVY AS TRUSTEE OF THE RICHARD
GILBERT FAMILY TRUST,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

      Plaintiff, Lyman Commerce Solutions, Inc. ("LCS"), brings this action to recover payments allegedly made by MUDD USA LLC ("MUDD") to defendants Richard Gilbert, R.D. Simpson, Inc., the Richard Gilbert Family Trust, and Irwin Levy as Trustee of the Richard Gilbert Family Trust ("the Gilbert defendants") and the Lung defendants, Conrad Lung, former president of MUDD, and Lung Consultants, LLC-an entity which Lung allegedly controlled.

      Plaintiff alleges that these payments, which were made during a pending court proceeding by MUDD to its officers and owners located in New York, were fraudulent conveyances under New York Debtor and Creditor Law ("DCL").

      On September 7, 2012, the Gilbert defendants moved to dismiss the complaint, arguing that the law of Iowa (where LCS is located) or Delaware

(where MUDD was formed) governs the dispute; that a default judgment entered in Iowa is now a nullity because, upon MUDD's corporate dissolution in Delaware, the Iowa court was deprived of jurisdiction over defendants; and finally, that plaintiff has failed to plead lack of fair consideration as required under DCL § 273–a and thus could not state a claim for relief under that section.

On August 30, 2013, the court issued an opinion denying Gilbert defendant's motion to dismiss in its entirety. On September 13, 2013, the Gilbert defendants moved for the court's reconsideration, arguing that the court erred in its choice of law analysis. That is, defendants contend that the court incorrectly concluded that New York law applied to plaintiff's constructive fraudulent conveyance claims, and that the law of Iowa – where LCS is located – is the correct choice of law.

For the following reasons, the motion should be denied.

## BACKGROUND

### THE PARTIES

Plaintiff, LCS, provides online commerce technology, marketing and design services. MUDD USA, LLC – a now defunct company, incorporated in Delaware – was once in the field of manufacturing, among other things, women's jeans. MUDD filed for dissolution in August of 2008.

2

Two defendants in this action were once managers and officers of MUDD. One, Richard Gilbert, was the CEO of MUDD and was also a manager on MUDD's board of managers. The other, Conrad Lung, was the President of MUDD and a manager on its board of managers as well. The Gilbert Family Trust, also a named defendant, was managed by defendant Trustee Irwin Levy.

**THE UNDERLYING LITIGATION**

LCS provided online commerce services to MUDD pursuant to an agreement between the parties. In early 2006, MUDD defaulted on its payment obligations under the agreement. On February 19, 2007, LCS, in response, filed a lawsuit against MUDD in the Iowa state district court seeking money damages for breach of contract. The lawsuit resulted in a judgment entered against MUDD in the amount of $2,176,049.01 on March 17, 2009. LCS then sued MUDD in New York state court, which resulted in a judgment entered on February 24, 2010.

**THE FRAUDULENT TRANSFERS**

The alleged fraudulent transfers, which took place over an 18 month period that included the Iowa litigation, were carried out by various methods in order to avoid paying the underlying judgment. The complaint alleges that between February 2007 and August 2008 that nearly $4 million of MUDD's funds were funneled from MUDD directly to accounts controlled by Gilbert and Lung or to entities that they owned and controlled. For example, it is alleged that between February 19, 2007 and June 30, 2007, MUDD made salary

payments to Gilbert totaling $336,377.25 and to Lung totaling $261,390.00. In addition, MUDD also made two $30,000 payments to R.D. Simpson – a company owned by Gilbert – on April 2, 2007 and again on June 7, 2007. These transfers were alleged to have been made when MUDD was engaged in no real business operations.

    Shortly after these transactions took place, Gilbert and Lung also executed a resolution of MUDD's board of managers, which authorized MUDD to buy Gilbert's interest in the company. Gilbert executed the so-called buy-out agreement on behalf of himself and R.D. Simpson, and Lung executed it in New York on behalf of MUDD. Thereafter, MUDD made nearly $2 million in transfers to the Gilbert Family Trust and $1,700.00 to Gilbert. Each of these transfers was made from MUDD's New York brokerage accounts to Gilbert defendants' New York accounts. MUDD also allegedly wired $1.2 million from its New York brokerage account directly to Lung's New York checking account. And finally, it is alleged that from 2007-2008 Lung signed and deposited various checks transferring $265,716.87 from MUDD's New York bank account to New York accounts held by a company that he owned called Lung Consultants. In sum, the complaint alleges that all of these transactions were made with an aim at depleting the funds available to satisfy plaintiff's valid judgment in violation of New York Debtor Creditor Law.

## DISCUSSION

In denying Gilbert defendants' motion to dismiss on August 30, 2013, the court found that New York Debtor Creditor Law § 273–a, the basis for plaintiff's constructive fraudulent conveyance claim, did not require a showing of fraudulent intent, while both Iowa law and Delaware law required such a showing. Therefore, it followed that a conflict of laws existed. Upon recognizing the existing conflict, the court engaged in a choice of law analysis and came to the conclusion that New York law governed plaintiff's § 273–a claims. Gilbert defendants now contend that the court erred in making that determination. More particularly, they argue that Iowa law governs those claims because the alleged injury occurred in Iowa, where LCS – a judgment creditor – is located. In opposition to the motion for reconsideration, plaintiff mainly relies on its prior submission in opposition to the motion to dismiss.

As the court stated in its decision, in any tort case, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." And "[a] tort occurs in the place where the injury was inflicted, which is generally where the plaintiffs are located." The Gilbert defendants now argue that the court did not follow these principles to come to the correct conclusion that plaintiff is located in Iowa and therefore the law of Iowa applies.

However, the court very clearly stated in its August 30, 2013 decision that the difference between New York and **both Iowa and Delaware law** is that "in New York, a plaintiff need not prove [fraudulent] intent" to establish a

constructive fraudulent conveyance claim. Id. at 7.  More particularly, the court found that under those laws, "where the debtor was a defendant in a lawsuit when it made the conveyance, a plaintiff must still prove actual fraudulent intent." Id.  The court then engaged in an "interest analysis" to conclude that New York law applied to plaintiff's constructive fraudulent conveyance claims.  Although it is true that the court did not explicitly refer to Iowa law in its choice of law analysis, but rather Delaware law, that omission did not determine the result.  The court's decision would not have been different if the court would have mentioned Iowa law, as both  6 Del. C. § 1304 (Delaware law), and I.C.A. § 684.4 (Iowa law), require a showing of "actual intent to hinder, delay, or defraud any creditor of the debtor," while DCL § 273–a does not.

     Moreover, contrary to defendants' contention, the fraud alleged in this action is "conduct regulating," and thus where the fraud occurred, as opposed to where LCS was located, is more germane to the court's conclusion that New York law applied to plaintiff's constructive fraudulent conveyance claims. While they cite authority in support of its position that Iowa law governs, see, e.g., Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co., 375 F. Supp. 2d 257, 268 (S.D.N.Y. 2005) (applying New York fraudulent-conveyance law to a case involving a New York creditor, a Korean defendant, and transfers in Korea), Gilbert defendants cannot refute the Second Circuit's controlling opinion in Licci v. Lebanese Canadian Bank, SAL, 672 F.3d 155 (2d Cir. N.Y. 2012).

There, the Court of Appeals recognized that for tort claims involving conduct-regulating laws the location of the injury and plaintiff's domicile do not govern the choice of law analysis. Id. 672 F.3d at 158.  Contrary to Gilbert defendants' position, "the location of the injury does not control; instead, it is the location of the defendant's conduct that controls." Wultz v. Bank of China Ltd., 865 F. Supp. 2d 425, 429 (S.D.N.Y. 2012).

This proposition is well-settled in the fraudulent conveyance context. For example, in Tyco Int'l, Ltd. v. Kozlowski, 756 F. Supp. 2d 553, 559-60 (S.D.N.Y. 2010), this court found that claims of constructive fraud were governed by New York law and that the location of the wrongful conduct, not the place of plaintiff's injury, was determinative in its choice of law analysis.  Similarly in GFL Advantage Fund, Ltd. v Colkitt, 2003 WL 21459716, *3 (S.D.N.Y. 2003), this court held that given that fraudulent conveyance laws are "conduct regulating", the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.

Here, the alleged tortious conduct primarily occurred in New York. For example, it is alleged that MUDD made nearly $2 million in transfers to the Gilbert Family Trust and $1,700.00 to Gilbert.  Each of these transfers was made from MUDD's New York brokerage accounts to Gilbert defendants' New York accounts.  Moreover, the so-called buy-out agreements were executed, at least in part, in New York.  The simple fact that LCS is a business organized

7

under the laws of Iowa does not neutralize the State of New York's interest in preventing this kind of wrongful, fraudulent conduct, which allegedly occurred within its borders and resulted from at least some concerted action on defendants' part.

## CONCLUSION

For the forgoing reasons, the court denies Gilbert defendants' argument that Iowa law governs plaintiff's fraudulent conveyance claims.

This opinion resolves docket item number 55.

SO ORDERED.

Dated: New York, New York

February 6, 2014

Thomas P. Griesa

U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/6/14

8